NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1821

_____

XU FENG,

Appellant

v.

UNIVERSITY OF DELAWARE

_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-16-cv-00664)
District Judge: Honorable Eduardo C. Robreno

_____

Argued March 6, 2019

Before: AMBRO, HARDIMAN, and FUENTES, Circuit Judges

(Opinion filed: August 28, 2019)

Jason J. Bach
The Bach Law Firm, LLC
7881 West Charleston Blvd, Suite 165
Las Vegas, NV  89117

Stephanie Denzel (Argued)
253 Montelo Road
Memphis TN  38120

        Counsel for Appellant

Selena E. Molina
James D. Taylor, Jr. (Argued)
Saul Ewing Arnstein & Lehr
1201 North Market Street, Suite 2300
Wilmington, DE  19801

      Counsel for Appellee

———————————

OPINION[*]

———————————

AMBRO, <u>Circuit Judge</u>

Xu Feng is a Chinese national who came to the United States in 2013 for post-graduate studies following undergraduate education in his native country.  After attending a prep class at the University of California – Irvine, Feng enrolled in a master's program in social studies and world history at the University of Delaware beginning in the summer of 2014.  The program was designed for aspiring high school teachers who were actively working and thus could only participate part-time.  It required students to take two courses during the summer session and one course each in the fall and the spring.

At first Feng did well in the program, but at the start of the 2014 fall semester the University informed him that, in order to maintain his "full-time" student standing and thereby maintain his immigration status, he had to enroll in three courses instead of one.  Feng's performance plummeted, and he was eventually expelled from the program under the University's academic standing policies.  He then brought this action against the

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

University, alleging national origin discrimination under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.*, as well as state-law claims for breach of contract, unjust enrichment, and fraud. The District Court granted summary judgment to the University, reasoning as to the federal discrimination claim that Feng had failed to provide valid comparator evidence. Undoubtedly Feng's case would have been stronger with that evidence. But a discrimination plaintiff like Feng is not required to use that method, or any particular method, to prove his case. Thus we vacate the grant of summary judgment as to the Title VI claim, but affirm summary judgment on the state-law claims for substantially the reasons stated by the District Court.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.[1] Cases under Title VI are governed by the same framework as those under other federal civil rights laws such as Title VII, which covers employment discrimination claims. *See, e.g.*, *Hankins v. Temple Univ. (Health Sciences Center)*, 829 F.2d 437, 440 (3d Cir. 1987) (applying *McDonnell Douglas* framework to case brought under both Title VI and Title VII); *NAACP v. Med. Ctr., Inc.*, 657 F.2d 1322, 1336 (3d Cir. 1981) (*en banc*) (discussing symmetries between Title VI and Title VII standards).

---

[1] The parties do not dispute that the University of Delaware receives federal assistance and is therefore covered by Title VI.

Where a plaintiff relies on indirect proof of discrimination, this means we apply the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiffs must first show a *prima facie* case, generally meaning that they suffered some adverse action under circumstances suggesting that the action was related to their membership in a protected group. *Id*. at 802. This is not a heavy burden. *Id*. The defendant must then give a "legitimate, nondiscriminatory" reason for its actions. *Id*. at 802–03. Once this is done, the burden shifts back to the plaintiff to show that the reason given "was in fact pretext." *Id*. at 804.

When a plaintiff presents direct evidence that his treatment was based on race or some other protected classification, a different standard applies. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 270 (1989) (O'Connor, J., concurring in the judgment) (noting the discrepancy between the two frameworks). The defendant must show by a preponderance of the evidence that it would have reached the same result even without taking that improper consideration into account. *Id*. at 252–53. Unlike *McDonnell Douglas*, this is a true burden of proof, not merely a burden of production. *Id*. at 270 (O'Connor, J., concurring in the judgment).

The District Court assumed that the *McDonnell Douglas* framework applies to Feng's discrimination claim.[2] It then framed the elements of his *prima facie* case as whether:

(1) he was a member of a protected class;

---

[2] Feng does not challenge the applicability of the *McDonnell Douglas* framework to his claim, and we do not consider whether that is the proper framework applicable here.

4

(2) he was qualified to continue the pursuit of his education;

(3) he was treated differently than similarly situated students who were not

members of the protected class; and

(4) he suffered an adverse action.

*See Feng v. Univ. of Del.*, 2018 WL 1462224, at *1 (D. Del. 2018). It then found that

"[w]hile Plaintiff's discrimination claim suffers from several infirmities, one primary

flaw is that he has not established a prima facie case since he, inter alia, has failed to

show he was treated differently than similarly situated students who were not members of

his protected class." *Id*. The Court held that "[t]he proper comparator class is non-

Chinese students in the program whose GPA fell below the required 2.0," and that

because Feng provided no evidence of any such individuals, his discrimination claim

"must fail." *Id.*

"Although comparative evidence is often highly probative of discrimination, it is

not an essential element of a plaintiff's case." *Anderson v. Wachovia Mortg. Corp.*, 621

F.3d 261, 268–69 (3d Cir. 2010) (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344,

353 (3d Cir. 1999)). Instead, "the permissible evidence . . . 'may take a variety of

forms.'" *Id*. at 270 (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 186

(1989)). The Second Circuit has expounded at length on the reasons why comparator

evidence is not indispensable, namely that "the ultimate issue is the reasons for *the*

*individual plaintiff's* treatment, not the relative treatment of different *groups*." *Brown v.*

*Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis in original). Thus, in the

employment discrimination context "discrimination against one employee cannot be

5

cured, or disproven, solely by favorable, or equitable, treatment of other employees of the same race or sex. . . . And, whether an employee discriminates against only a subset of a protected class, or discriminates inconsistently, Title VII nevertheless protects any individual so long as that individual is mistreated because of her sex." *Id*. at 252–53 (citation omitted). And, conversely, there is no requirement that a plaintiff in, for example, a sex discrimination case show that the defendant has "treated similarly situated men differently." *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 121 (2d Cir. 2004).[3]

In this context, we vacate the grant of summary judgment as to Feng's Title VI discrimination claim. On remand the District Court can engage in additional fact-finding or, as necessary, discovery regarding an issue that came to our attention after oral argument: the source of the requirement that Feng take three courses per semester to maintain his immigration status. Although both parties' briefing seemingly took for granted that this requirement came from federal law, the regulations in question appear to allow the University to determine what qualifies as a "full course of study." *See* 8 C.F.R. § 214.2(f)(6)(i)(A). Rather than attempting to disentangle the facts for ourselves, or

---

[3] Following its citation of authority back to the source, it appears that the District Court's contrary framing of Feng's *prima facie* case ultimately derived from *Bell v. Ohio State Univ.*, 351 F.3d 240 (6th Cir. 2003). But that case only held, citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992), that "a plaintiff *may* substitute for the fourth element in the typical *McDonnell Douglas* framework evidence that similarly situated individuals outside the protected class received better treatment." *Bell*, 351 F.3d at 253. It does not follow, however, that this is a required element in every discrimination case under *McDonnell Douglas*, and in any event *Bell* is a Sixth Circuit case that could not control over our contrary precedent in *Anderson*.

6

determining what effect they have on the viability of Feng's discrimination claim, we leave that task in the first instance to the District Court.

We do, however, affirm the Court's grant of summary judgment as to Feng's three state-law claims for substantially the reasons it stated. Feng's reinstatement agreement did not bind the University to any particular action, and thus cannot support a breach-of-contract claim, both because it likely was not an enforceable contract and because the University cannot have breached it in any event. A university is not unjustly enriched when a student pays tuition to attend but ultimately does not receive a degree. And there is nothing in the record indicating that the University made any knowingly false representations to Feng. Hence his claims for breach of contract, unjust enrichment, and fraud all fail.

Thus we affirm in part but vacate and remand in part.